# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LUIS ARANGO, | ) | |
| | ) | |
|     **Plaintiff,** | ) | No. 11 C 1525 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| WORK & WELL, INC., | ) | |
| | ) | |
|     **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

In 2010, when plaintiff was working for Sysco, he requested a twelve-week leave pursuant to the Family Medical Leave Act ("FMLA"). Defendant Work & Well, Inc. was Sysco's FMLA leave administrator. Plaintiff alleges that defendant wrongly told Sysco that he was not entitled to the last six weeks of leave he requested, and Sysco terminated him as a result. In the sole remaining claim in this suit, plaintiff alleges that defendant is liable for tortious interference with his contractual relationship with Sysco. Both parties have filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court denies the motions.

## Discussion

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*,

209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

**Preemption**

Defendant contends that plaintiff's claim for tortious interference is preempted by the FMLA. That is true only if: (1) the FMLA expressly states that it preempts state law; (2) the FMLA "so thoroughly occupies a legislative field [that] it [is] reasonable to infer that Congress left no room for the states to act"; or (3) recognition of the state claim would hinder "the accomplishment and execution of the [FMLA's] purposes and objectives." *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008) (quotations omitted). The text of the statute itself, which states that it "[does not] supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under [the FMLA]" scotches any express or field preemption argument. 29 U.S.C. § 2651(b). Thus, conflict preemption is the only possible option.

To determine whether the state claim is an obstacle to the Congressional objectives of the FMLA, the Court "examin[es] the . . . statute as a whole and identif[ies] its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). "[T]he crucial inquiry" is whether the state law "frustrate[s]" "achievement of the [FMLA's] objective." *MITE Corp. v. Dixon*, 633 F.2d 486, 493 (7th Cir. 1980). A state law is not subject to conflict preemption unless that was Congress' "clear and manifest" intent. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

The stated purposes of the FMLA are:

(1) to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity;
(2) to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition;
(3) to accomplish the purposes described in paragraphs (1) and (2) in a manner that accommodates the legitimate interests of employers;
(4) to accomplish the purposes described in paragraphs (1) and (2) in a manner that, consistent with the Equal Protection Clause of the Fourteenth Amendment, minimizes the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons (including maternity-related disability) and for compelling family reasons, on a gender-neutral basis; and
(5) to promote the goal of equal employment opportunity for women and men, pursuant to such clause.

29 U.S.C. § 2601(b).

To accomplish these purposes, the statute requires employers to give eligible employees up to twelve workweeks of leave during any twelve-month period if, among other things, the employee has a serious health condition that renders him unable to perform the functions of his job. § 2612(a)(1). An employer cannot: (1) "interfere with, restrain, or deny the exercise of or the attempt to exercise, any [FMLA] right"; (2) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]"; or (3) discharge or discriminate against anyone for initiating an FMLA proceeding or giving information or testimony in connection with one. § 2615(a), (b). The statute gives an aggrieved employee the right to sue and makes an employer-violator liable for: (1) damages in the amount of the employee's lost compensation plus interest; (2) liquidated damages in an amount equal to the damages award, unless the employer proves that the violation was in good faith; (3) any appropriate equitable relief; and (4) the employee's reasonable attorneys' fees, expert witness fees and costs. § 2617 (a).

3

The statute defines "employer" as "a person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year," including "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." § 2611(4). However, this definition has been interpreted to exclude third-party benefits administrators like defendant:

> Normally the legal entity which employs the employee is the employer under FMLA. . . . Separate entities will be deemed to be parts of a single employer for purposes of FMLA if they meet the integrated employer test. . . . Factors considered in determining whether two or more entities are an integrated employer include:
> (i) Common management;
> (ii) Interrelation between operations;
> (iii) Centralized control of labor relations; and
> (iv) Degree of common ownership/financial control.
>
>  . . . .
>
> A type of company that is often called a "Professional Employer Organization" (PEO) contracts with client employers to perform administrative functions such as payroll, benefits, regulatory paperwork, and updating employment policies. The determination of whether a PEO is a joint employer also turns on the economic realities of the situation and must be based upon all the facts and circumstances. A PEO does not enter into a joint employment relationship with the employees of its client companies when it merely performs such administrative functions. On the other hand, if in a particular fact situation, a PEO has the right to hire, fire, assign, or direct and control the client's employees, or benefits from the work that the employees perform, such rights may lead to a determination that the PEO would be a joint employer with the client employer, depending upon all the facts and circumstances.

29 C.F.R. §§ 825.104(c), 825.106(b)(2); *see Baer v. Masonite Corp.*, No. 3:11cv124, 2011 WL 3806279, at *4-5 (N.D. Ind. Aug. 29, 2011) (dismissing FMLA claim against third-party FMLA leave administrator whose advice caused plaintiff's employer to terminate him); *Jensen v. AT&T Corp.*, No. 4:06-CV-842 (CEJ), 2007 WL 3376893, at *2 (E.D. Mo. Nov. 13, 2007) (same); *see also*

4

*Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644-45 (7th Cir. 2008) (stating that entities are joint-employers under the FMLA only if both "exercise control over the [employee's] working conditions" and affirming district court's dismissal of FMLA claim against a municipality that hired plaintiff's employer to provide 911 communications but exercised no control over her). Accordingly, the Court dismissed plaintiff's FMLA claim against defendant. (*See* Nov. 15, 2011 Minute Order; July 24, 2012 Mem. Opinion & Order at 2.)

The question, then, is whether allowing plaintiff to assert a tortious interference claim against defendant, which is not an FMLA employer, would frustrate the statute's goals of balancing workplace and family demands while accommodating employers' legitimate interests and promoting equal employment opportunity? *See* § 2601(b). The answer is no. In fact, the opposite is true. The FMLA shields an employer from a liquidated damages award if it proves it acted in "good faith" and had "reasonable grounds" for believing its actions were lawful, both of which would arguably be satisfied by its reliance on a third-party administrator's advice. § 2617(a)(1)(A)(iii). If administrators were exempt from both FMLA and tort liability, they could deny meritorious FMLA claims – thereby saving their clients FMLA costs for all employees but those willing to sue, giving their clients a liquidated damages defense for any FMLA suit that was filed against them and enhancing their own reputations and revenues – with impunity. Thus, permitting plaintiff to assert his FMLA-based tort claim against defendant will foster, rather than hinder, the objectives of the federal statute.

It is true, as defendant notes, that other courts have held FMLA-based tort claims to be preempted. *See, e.g.*, *Alvarez v. Hi-Temp Inc.*, No. 03 C 2610, 2004 WL 603489, at *4-5 (N.D. Ill. Mar. 24, 2004) (negligent supervision claim asserted against FMLA employer held preempted);

5

*Cavin v. Honda of Am. Mfg., Inc.*, 138 F. Supp. 2d 987, 998 (S.D. Ohio 2001) (stating that "plaintiff may not circumvent the enforcement scheme and the remedial structure which Congress has so specifically set forth in the FMLA" by asserting an FMLA-based wrongful discharge claim against his employer); *Desrochers v. Hilton Hotels Corp.*, 28 F. Supp. 2d 693, 695 (D. Mass. 1998) (holding that employees' state civil rights act claim asserted against employer was preempted because "[the FMLA's] comprehensive detailed enforcement provisions . . . show Congress' intention that the specific remedies set forth in Section 2617. . . are the exclusive remedies for the violation of the [statute]"); *Vargo-Adams v. U.S. Postal Serv.*, 992 F. Supp. 939, 944 (N.D. Ohio 1998) (holding that FMLA-based wrongful discharge claim was preempted). However, in those cases, the tort claim was asserted against the FMLA employer, which presents a much more compelling case for preemption.[1] Because plaintiff asserts his claim against a party that is exempt from FMLA liability, the logic underlying preemption simply does not apply.

**Merits**

To prevail on his claim for tortious interference, plaintiff must prove that he had a reasonable expectation of entering into a valid business relationship with Sysco, defendant knew

---

[1]Compelling, but not conclusive, as a number of courts have permitted employees to assert FMLA-based tort claims against their employers. *See Rodi v. Target Corp.*, No. 03 C 7507, 2004 WL 626812, at *3 (N.D. Ill. Mar. 26, 2004) (holding that the FMLA did not preempt claim against employer for intentional infliction of emotional distress); *Hunt v. Honda of Am. Mfg. Inc.*, No. C2-01-1188, 2002 WL 31409866, at *2 (S.D. Ohio Sept. 4, 2002) (holding that wrongful discharge claim was not preempted because the FMLA's savings clause "reveals Congress' intent that the remedies available under the FMLA are not to be considered exclusive, and . . . federal law is not to preempt state claims"); *Buser v. S. Food Serv., Inc.*, 73 F. Supp. 2d 556, 572 (M.D. N.C. 1999) (rejecting employer's contention that FMLA-based claims for negligent and intentional infliction of emotional distress were preempted).

about the expectation and intentionally and unjustifiably interfered with it and plaintiff was damaged as a result. *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996). However, "a consultant, or other advisor, [is privileged] to offer good-faith advice to a client without fear of liability [for tortious interference] should the client act on that advice to the harm of a third person." *J.D. Edwards & Co. v. Podany*, 168 F.3d 1020, 1022 (7th Cir. 1999). The privilege is lost, however, "if the consultant does not give honest advice – if he uses his engagement to hurt other people exclusively for his own benefit (or out of dislike of his victim) rather than for the benefit of his client," *id.* at 1022-23, or uses illegal means to interfere with the third-party's contract. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 678 (Ill. 1989). However, "mistakes do not void the consultant's privilege." *J.D. Edwards*, 168 F.3d at 1024.

Defendant argues that there is no evidence to suggest that it abused its consultant's privilege. The Court disagrees. It is undisputed that plaintiff started working for Sysco in 2001, and in 2009, Sysco hired defendant to administer its employees' FMLA leave requests. (Pl.'s Objs. & Resp. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 3-4.) The contract between Sysco and defendant states that "**W&W's WorQuest® services ensure consistent, complete FMLA compliance**" and

> **will reduce the number of leaves and leave time out of work.** Because only W&W does a *complete, two-step medical certification*, our program typically reduces STD/FMLA usage and absenteeism due to intermittent FMLA leave by 30-50%. The current industry-accepted average cost per day of absenteeism is $300.00. With W&W's expected savings in days out of work, your investment in W&W's program will more than pay back within the first six months, and will generate substantial net cost savings in year one.

(Pl.'s Ex. I, Contract at Sysco Chi 0000451-52) (emphasis original).

The record contains a number of documents that defendant admittedly gave its employee that set forth guidelines for evaluating FMLA leave requests. (*See* Def.'s Answers Pl.'s 56.1 Stmt. ¶¶ 9-10.) Among other things, the documents state:

> Partial leave certification – W&W typically certifies leaves in blocks of 4-6 weeks. This allows W&W to check on the employee's progress and continued disability status. For instance, if employee's doctor writes that the employee will need to be out on leave from 8/1 - 12/1, W&W would typically certify the leave initially for 4-6 weeks (8/1 to 9/15), and then request additional medical documentation around 9/15 to certify the employee's continued disability.

(Pl.'s Ex. K, W&W 00035, 40-41.)

> If the initial application has the diagnosis and appropriate treatment plan and is signed by the appropriate healthcare provider, the nurse may approve the appropriate time requested by the health care provider up to 1 month.
>
> The nurse may review additional information provided by the health care provider and **continue to approve time provided the medical documentation received supports disability up to 2 months. (Senior case management nurse may review up to 3 months.)**

(*Id.* at 43) (emphasis original).

> Upon receipt of the medical documentation the clinician will determine an approval status.
>
> The clinician will indicate in the review that the employee will be required to provide medical documentation on a monthly basis concurrent with an absence and what the employee will be eligible for under FMLA, exacerbation, MD visits, PT etc.

(*Id.* at 46.)

On November 15, 2010, plaintiff's doctor submitted to defendant a medical certification requesting FMLA eight weeks of leave for plaintiff from November 22, 2010 to January 15, 2011. (Pl.'s Objs. & Resp. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 20-22.) Defendant approved the request in part, granting plaintiff four weeks of leave from November 15, 2010 through December 18, 2010. (*Id.* ¶ 29.) Defendant also told plaintiff that his leave would be extended only if his doctor submitted

additional information to defendant by December 25, 2010. (*Id.* ¶ 30.) Plaintiff's doctor did not submit additional information to defendant until January 17, 2011, by which time Sysco had already decided to terminate plaintiff. (*Id.* ¶¶ 54-64.) The termination was effective January 17, 2011. (*Id.* ¶ 71.)

Given defendant's undisputed promise to Sysco that it would "**ensure consistent, complete FMLA compliance**," it is reasonable to infer that defendant knew what kind of information the FMLA permitted it to obtain from an employee and when it was permitted to do so. (*See* Pl.'s Ex. I, Contract at Sysco Chi 0000451-52) (emphasis original). Thus, defendant knew that "if "an employee submits a complete and sufficient certification signed by the health care provider, the employer is may not request additional information from the health care provider." 29 C.F.R. § 825.307(a). It also knows that "[i]f the medical certification indicates that the minimum duration of the condition is more than 30 days, [the] employer must wait until that minimum duration expires before requesting a recertification" unless: (1) "[c]ircumstances described by the previous certification have changed significantly (e.g., the duration or frequency of the absence, the nature or severity of the illness, complications)"; or (2) "[t]he employer receives information that casts doubt upon the employee's stated reason for the absence or the continuing validity of the certification." 29 C.F.R. § 825.308(a), (b), (c)(2), (3).

Despite defendant's presumed knowledge of the law, it is undisputed that defendant simultaneously accepted the certification from plaintiff's doctor, which supported an eight-week leave, but gave plaintiff only four weeks of leave and told him he would have to submit additional medical documentation after that period to obtain the rest of the leave that his doctor said was required. Moreover, the record shows that this decision was not an aberration. Rather, it resulted

9

from the execution of defendant's "*complete, two-step certification*" process – approving only four to six weeks of leave, regardless of the amount supported by the medical certification and requiring employees to submit additional medical evidence to obtain additional leave – that it said "typically reduces STD/FMLA usage and absenteeism due to intermittent FMLA leave by 30-50%." (*See* Pl.'s Ex. I, Contract at Sysco Chi 0000451-52) (emphasis original).

These undisputed facts are sufficient to suggest, though they do not conclusively prove, that defendant intentionally denied meritorious FMLA leave requests to enhance its reputation as a benefits administrator and increase its book of business.[2] Thus, the record raises a genuine issue of material fact as to whether defendant is entitled to the consultant's privilege.

---

[2]Defendant also argues that it could not have violated the FMLA because there is no evidence that plaintiff had a serious medical condition, and thus was eligible for FMLA leave. (Def.'s Resp. Pl.'s Cross-Mot. Summ. J. & Reply Supp. Mot. Summ. J. at 7.) First, defendant waived this argument by raising it for the first time in its reply brief. *See James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998). Second, even if it were preserved, the argument is refuted by defendant's contract with Sysco, which states that "W&W nurses and/or physician reviewers will review the medical documentation and determine whether the [FMLA] leave request qualifies as a serious medical condition" and defendant's undisputed approval of four weeks of FMLA leave for plaintiff. (*See* Pl.'s Ex. I, Contract at Sysco Chi. 0000450; Pl.'s Objs. & Resp. Def.'s 56.1(a)(3) Stmt. ¶ 29.)

## Conclusion

For the reasons set forth above, the Court denies both parties' motions for summary judgment [doc. 183 & 193]. At the next status hearing, the parties should be prepared to set a date for filing the final pretrial order and for trial.

**SO ORDERED.**                               **ENTER:  March 15, 2013**

*Ronald A. Guzman*
_____
**HON. RONALD A. GUZMAN**
**United States District Judge**